[Nos. A113341, A114313. First Dist., Div. Five. Nov. 9, 2007.]

JOSE ORTEGA, Plaintiff and Appellant, v.
CONTRA COSTA COMMUNITY COLLEGE DISTRICT, Defendant and
Respondent.

COUNSEL

Sundeen Salinas & Pyle, Robert Salinas; and Leah Hess for Plaintiff and Appellant.

Patricia A. Shiu, Sharon Terman and Professor Joseph Grodin for the Legal Aid Society-Employment Law Center as Amicus Curiae on behalf of Plaintiff and Appellant.

Weinberg, Roger & Rosenfeld and Stewart Weinberg for United Faculty of Contra Costa Community College District as Amicus Curiae on behalf of Plaintiff and Appellant.

Shupe and Finkelstein and John A. Shupe for Defendant and Respondent.

OPINION

SIMONS, J.—Demoted from his position as the head football coach at Contra Costa Community College (College) in March 2004 and ultimately terminated from the College at the conclusion of the 2005 school year, Jose Ortega filed two separate suits against the Contra Costa Community College District (District) under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) challenging, respectively, the demotion and the termination. The trial court dismissed each complaint, concluding Ortega failed to exhaust the administrative remedies provided in the collective bargaining agreement (CBA) entered into between United Faculty, the union representing Ortega, and the District. We conclude the trial court erred. Because the District's internal grievance procedures were created by a CBA and culminated in an arbitration, neither administrative nor judicial exhaustion applies to bar Ortega's claims.

## BACKGROUND

Ortega was hired in the fall of 1996 by the District as an assistant football coach at the College. He served as the interim head football coach from August 1999 to January 2001, and was hired as the head football coach and as a physical education teacher in January 2001. On March 2, 2004, Ortega was removed from his position as head football coach. Ortega was notified on February 25, 2005, he would be terminated from his employment at the end of the school year, and was terminated in June 2005.

### Claims Regarding Ortega's Removal from Coaching Position

After his demotion from his position as head football coach, Ortega filed a statement of grievance on April 7, 2004, alleging a violation of the CBA.[1] In the grievance Ortega claimed that, by refusing to assign him as the head football coach, the District improperly rejected the assignment made by the physical education department in violation of several provisions in the CBA regarding scheduling faculty members. College president Helen Carr sent Ortega a memo denying his grievance on April 16, citing a failure to follow proper procedure and a failure to comply with grievance timelines. Ortega responded to the denial, and his claims were again rejected on procedural grounds on May 26, 2004. On June 3, 2004, Ortega requested a Level III factfinding panel. The union and the District each suggested a panel member; however, the process proceeded no further.

Ortega filed a complaint with the California Department of Fair Employment and Housing (DFEH) and received a right-to-sue notice on April 26, 2004. On August 12, 2004, Ortega filed a complaint in the Contra Costa Superior Court against the College (the demotion action). The District was later substituted in as defendant. Ortega filed his first amended complaint on

---

[1] The CBA sets forth a multilevel grievance procedure applicable to an allegation that a member "has been adversely affected by a violation of a specific article, section or provision" of the agreement. The procedure is as follows: At "Level I," the grievant communicates the grievance to the college president or designee; at "Level II," the grievant may appeal the outcome of the Level I step of the grievance procedure in writing to the chancellor or designee; at "Level III," the grievant may, "but only with the concurrence and participation" of the union, give written notice to the chancellor demanding a factfinding panel be formed, and this panel shall hold a hearing and make a decision that, in some cases, becomes automatically binding; and, at "Level IV," the grievant may, with or without concurrence of the union, bypass the Level III step of the grievance procedure and appeal the chancellor's decision to the board of trustees.

October 21, 2004, alleging he was Hispanic, and his supervisors and coworkers, who were African-American or White, treated him differently, held him to different standards, and disciplined him more harshly. His complaint included three causes of action: (1) race discrimination in violation of Government Code section 12940, (2) intentional infliction of emotional distress, and (3) negligent supervision. Ortega's prayer for relief included reinstatement to his position as head football coach, compensatory damages, general damages, punitive damages, and a permanent injunction enjoining the District from engaging in the unlawful practices alleged. In his complaint, Ortega alleged that he had exhausted all of his administrative remedies.[2]

The District filed an answer to Ortega's complaint on November 19, 2004, asserting 24 affirmative defenses, including that "the complaint is barred because plaintiff has failed to exhaust any applicable administrative remedies."

On November 28, 2005, the District filed a motion to dismiss based on Ortega's failure to exhaust the applicable grievance process, which the court granted. The order dismissing the operative complaint was filed and judgment was entered for the District on January 25, 2006.

### Claims Regarding Ortega's Termination

When his employment contract was not renewed, Ortega filed a second statement of grievance on June 28, 2005, alleging he was improperly terminated. This grievance was denied for failure to properly request a hearing and for failure to allege any specific violations of the CBA. It appears that no further action was taken pursuant to the CBA grievance procedure.

Ortega received a second right-to-sue notice from the DFEH on June 29, 2005. He filed a complaint related to his termination against the District on December 27, 2005 (the termination action).[3] This complaint included five causes of action: (1) race discrimination in violation of Government Code section 12940, (2) intentional infliction of emotional distress, (3) negligent supervision, (4) retaliation in violation of Government Code section 12940, and (5) wrongful termination in violation of public policy. Ortega alleged he exhausted all of the administrative remedies required by the FEHA. Ortega's prayer for relief included a request for reinstatement to his position of head

---

[2] In addition to the DFEH documents, Ortega also attached to his complaint his claim form submitted to the District on May 17, 2004, and the corresponding rejection dated July 1, 2004.

[3] It appears Ortega first attempted to amend the complaint in the demotion action to add the termination claims, but the court did not allow him to do so.

football coach, compensatory damages, general damages, punitive damages, and a permanent injunction enjoining the District from engaging in the alleged unlawful practices.

On March 1, 2006, the District filed a motion to strike each cause of action set forth in Ortega's complaint on the ground that the complaint was filed to evade the trial court's order dismissing the demotion action. The District also filed a demurrer to Ortega's complaint, arguing, in part, that the complaint should be dismissed because Ortega had not exhausted his administrative remedies.[4] Ortega opposed the demurrer and motion to strike, arguing that he had mistakenly submitted the CBA grievance following his termination, and as a probationary employee his grievance was not subject to or governed by the CBA.[5] He argued he was not required to exhaust any administrative remedies or grievance process.[6]

On April 12, 2006, the trial court sustained the demurrer without leave to amend. The court's order stated, "[Ortega] invoked the grievance process in order to challenge his termination. [Ortega] has not alleged that he has exhausted his administrative remedies. This court is without jurisdiction to hear this case." The court found the motion to strike was moot. On May 8, 2006, the court entered judgment dismissing the complaint in favor of the District.

Ortega has appealed from the judgments entered against him in both of his actions against the District. The appeals were consolidated for the purposes of oral argument and decision.

## DISCUSSION

In his lawsuits, Ortega filed both common law and FEHA claims alleging employment-related discrimination by the District. The trial court granted judgment for the District because Ortega had failed to prove he had exhausted an available administrative remedy created by the CBA in the

---

[4] The District filed a request for judicial notice in connection with its demurrer and motion to strike, requesting judicial notice of the grievance process set forth in the CBA, Ortega's grievance dated April 7, 2004, Ortega's grievance dated June 28, 2005, Ortega's operative complaint in the demotion action, the District's answer in that action, and the order dismissing the demotion action without prejudice for failure to exhaust administrative remedies. The trial court granted this request.

[5] In his grievance, Ortega noted that he was a tenured employee, and not probationary. However, in his opposition to the District's demurrer and motion to strike, Ortega stated that he was a probationary employee and he mistakenly filed the CBA grievance. The CBA states, "No probationary member may use this grievance procedure in any way to appeal discharge or a decision by the Board not to renew his/her contract."

[6] Ortega also attached the District governing board's rejection of his claim, dated September 1, 2005.

demotion action and failed to allege such exhaustion in the termination action. Ortega challenges these rulings on appeal.

## I. *Standard of Review*

The trial court's decision to grant the District's motion to dismiss Ortega's demotion action because of the failure to exhaust raises legal issues and is subject to de novo review. (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1136 [27 Cal.Rptr.3d 675].)[7] In Ortega's termination action, the District demurred, again relying on Ortega's failure to exhaust his administrative remedies. The trial court sustained the demurrer without leave to amend. We review this order de novo, exercising our independent judgment as to whether, as a matter of law, the complaint states a cause of action on any available legal theory. (See *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) In doing so, we assume the truth of all material factual allegations together with those matters subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect. [Citation.]" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] (*Schifando*).)

## II. *Ortega's FEHA Claims Are Not Barred by Administrative or Judicial Exhaustion*

The District relies on *Schifando, supra,* 31 Cal.4th 1074, *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*) and *Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135 [20 Cal.Rptr.3d 598] (*Page*) to argue Ortega's FEHA claims in his separate actions were barred by his failure to exhaust his internal administrative remedies. Discussion of the application of the exhaustion doctrine to FEHA claims properly begins with an analysis of *Johnson*.

In *Johnson*, the City of Loma Linda terminated Johnson from his position as an assistant city manager because of "budgetary problems" and, that same day, he filed a grievance with the city. After his grievance was rejected by the

---

[7] The trial court's decision on the motion followed a hearing in which the court examined only one factual dispute: Did Ortega's grievance include a race-based claim? The court sought offers of proof on this issue, but no agreement was reached by the parties. No evidence on this or any other disputed factual issue was submitted in the hearing.

personnel board and the city council upheld that decision, Johnson filed a discrimination claim with the DFEH. Johnson was granted a right-to-sue letter and filed an action in superior court. The trial court granted summary judgment for the City of Loma Linda on the basis that Johnson had failed to exhaust his judicial remedies. (*Johnson, supra*, 24 Cal.4th at pp. 66–67.) The Supreme Court affirmed, holding that if a public employee utilizes internal administrative procedures to pursue discrimination claims and receives an adverse finding, the employee must challenge that finding by means of a mandate action in superior court or the findings are binding in later civil actions filed under the FEHA. (*Johnson*, at pp. 65, 76.)

*Johnson* examined the distinction between the exhaustion of judicial and administrative remedies. The "requirement of exhaustion of judicial remedies is to be distinguished from the requirement of exhaustion of administrative remedies. [Citation.] Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation.] Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding 'effect to the administrative agency's decision, because that decision has achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.' [Citation.]" (*Johnson, supra*, 24 Cal.4th at p. 70.)

In *Schifando*, the Supreme Court held that a public employee who claims to have suffered employment-related discrimination need not exhaust an available internal administrative remedy with his employer prior to suing on an FEHA claim. (*Schifando, supra*, 31 Cal.4th at p. 1092.) Schifando filed a complaint against the City of Los Angeles alleging employment discrimination based on physical disability under the FEHA. (*Schifando*, at p. 1080.) The Court of Appeal affirmed the sustaining of the city's demurrer on the basis that Schifando was required to exhaust both the FEHA and the city charter remedies provided to City of Los Angeles employees before filing his lawsuit in superior court. (*Schifando*, at p. 1081.) The Supreme Court reversed. (*Id.* at p. 1092.) The court explained that " '[t]he FEHA was meant to supplement, not supplant or be supplanted by existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination.' " (*Schifando*, at pp. 1085–1086, italics omitted, quoting *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 431 [217 Cal.Rptr. 16, 703 P.2d 354].) The court discussed the differences between the FEHA's administrative system and the city charter procedures available to the city employee, and reasoned that some plaintiffs would prefer the summary procedures provided by the city charter, while others would prefer to bypass these procedures to vindicate their civil rights through litigation. (*Schifando*, at pp. 1082–1086, 1087.) The

court concluded the better rule was one that "allows aggrieved public employees to seek redress in the forum that is most appropriate to their situation." (*Id.* at p. 1089.)

*Schifando* distinguished *Johnson* as a case that held if city "employees have availed themselves of the administrative remedies a local statute affords, and have received an adverse quasi-judicial finding, that finding is binding on subsequent discrimination claims under the FEHA unless set aside through a timely mandamus petition. [Citation.]" (*Schifando, supra,* 31 Cal.4th at p. 1090.) "*Johnson* did not require the employee to exhaust his remedies before the city personnel board in order to assert an FEHA claim—in fact, the court made it clear that the issue was not before it. [Citation.]" (*Schifando,* at p. 1090.)

Finally, in *Page,* the Court of Appeal determined that having chosen the administrative process and pursued it through an evidentiary hearing, an employee had the burden to exhaust administrative and judicial remedies before filing an FEHA claim. (*Page, supra,* 123 Cal.App.4th at p. 1144.) Page was injured while working for a county probation department. (*Id.* at p. 1138.) When she was able to return to work, the department did not offer her the same or a similar position, and she filed a grievance before the civil service commission. (*Id.* at pp. 1138–1139.) Hearings were held and the hearing officer issued a written statement of decision finding that the department had not violated the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.). (*Page,* at p. 1139.) Page and the department objected to the recommended findings; but, before the civil service commission had notified the parties of its final decision, Page filed a complaint with the DFEH and *subsequently initiated a lawsuit for violations of the FEHA.* (*Page,* at pp. 1139–1140.) The department successfully demurred on the grounds that Page had failed to exhaust her administrative remedy and had failed to challenge the hearing officer's findings by a petition for writ of administrative mandamus. (*Id.* at pp. 1140–1141.) The Court of Appeal affirmed, stating that "Page chose the civil service commission process and proceeded through three days of hearings . . . , resulting in a comprehensive decision by the hearing officer. Page was not then free to ignore and abandon the administrative process and proceed to [an] FEHA action for damages. Page had to await a final [civil service c]ommission decision and, if it was adverse, then file a petition for writ of mandate in the trial court . . . . Only if she had done so and prevailed in the writ proceedings, thus vacating the [civil service c]ommission decision, could she have then filed a lawsuit, since the [civil service c]ommission's decision has issue and claim preclusive effect." (*Page,* at p. 1142.) The court concluded, "Though a public employee may choose to bypass the administrative process, if she pursues it through evidentiary

hearings to a proposed decision, then she has the burden to exhaust administrative and judicial remedies notwithstanding the risk that [an] FEHA claim may no longer be viable." (*Page*, at p. 1144.)

■ Thus, under *Schifando*, a public employee may choose to ignore statutory civil service remedies for employment discrimination and proceed directly to the courts to obtain relief under the FEHA. However, under *Johnson*, if the public employee elects to utilize the civil service remedies provided and receives an adverse finding, that finding binds the trial court in any subsequent FEHA action, unless the finding is overturned in a mandate proceeding. Finally, as *Page* explains, if the public employee has had an evidentiary hearing during the civil service proceedings, the employee may not opt out of those proceedings before a final decision is reached in order to file an FEHA claim in court. Instead the employee must exhaust the administrative remedies provided, until a final decision is obtained, and, if the decision is adverse, exhaust the judicial remedy by pursuing mandate relief.

The District argues that Ortega chose to initiate the internal grievance procedure provided in the CBA following each adverse employment action, and the doctrines of administrative and judicial exhaustion bar his lawsuits. But the District ignores the critical difference between the decisions it relies upon, where the employees' administrative remedies were provided by statute, and Ortega's cases, where his internal remedies were provided in a CBA.

In *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36 [39 L.Ed.2d 147, 94 S.Ct. 1011] (*Alexander*), the United States Supreme Court considered the preclusive effect of an arbitration decision on a subsequent discrimination claim under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), when the arbitration procedure was mandated by a CBA. The high court held that an adverse decision by the arbitrator does *not* bar a subsequent claim under title VII by an employee, who pursued the grievance "to final arbitration under the nondiscrimination clause of a [CBA]." (*Alexander*, at pp. 44, 49.) In *Camargo v. California Portland Cement Co.* (2001) 86 Cal.App.4th 995, 1006 [103 Cal.Rptr.2d 841] (*Camargo*), the court adopted the conclusion in *Alexander* and applied it to the FEHA, determining that a CBA-mandated arbitration has no preclusive effect on FEHA claims. The holding in *Alexander* stemmed, in part, from the high court's concern that the union often exercises control over the presentation of grievances under a CBA, and the union's interests may not always coincide with an individual employee's interest in the pursuit of his or her discrimination claim. (*Alexander*, at p. 58 & fn. 19; accord, *Barrentine v. Arkansas-Best Freight System* (1981) 450 U.S. 728, 742 [67 L.Ed.2d 641, 101 S.Ct. 1437]; cf. *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 35 [114 L.Ed.2d 26, 111 S.Ct. 1647].)

In *Johnson*, the plaintiff relied on *Alexander* to argue that the results of the City of Loma Linda's internal grievance procedure should not be binding on the trial court in his FEHA action. But our Supreme Court found *Alexander* distinguishable; the City of Loma Linda's internal grievance procedure was statutory, not contractual, like the procedure examined by the United States Supreme Court. (*Johnson, supra,* 24 Cal.4th at pp. 75–76.) In *Alexander,* "the arbitration was in the context of a [CBA], which by its very nature gives rise to a tension between collective representation and individual statutory rights. [Citations.] This case involves neither mandatory arbitration nor collective bargaining. Thus, the high court's decision in *Alexander* has no bearing on this case." (*Johnson,* at p. 76.)

■ As *Johnson* acknowledged, public employees who are provided statutory administrative remedies may be subject to different administrative and judicial exhaustion requirements than employees, like Ortega, who are governed by a CBA. The CBA governing Ortega's relationship with the District provides for a multilevel grievance procedure if the "grievant has been adversely affected by a violation of . . . this Agreement." The union exercises significant control over any such grievance. If the grievant wishes to be represented, the union designates that representative. The employee may unilaterally complain to the college president and, if not satisfied with the result, may unilaterally appeal to the chancellor. However, the employee does not have the authority to demand the creation of a factfinding panel. Instead, the factfinding is conducted "only with the concurrence and participation" of the union. Yet, as recognized by *Alexander* and *Johnson,* the union may well have good faith representational interests that differ from the employee's individual interests, and these distinct interests may lead the union to block the factfinding proceeding or conduct it in a way that is inimical to the employee's interests. We would ignore this reality if we denied Ortega judicial relief because he did not pursue the factfinding process he had no absolute right to obtain.

■ The District argues *Alexander* and *Camargo* are inapposite because each concerned the preclusive effect of the *arbitration* of an employee grievance. The District asserts the factfinding mandated by the CBA was not an arbitration and was subject to review by writ of mandate, but cites no authority for either proposition. It is clear enough that the CBA never employs the term "arbitration." However, "the failure of the agreement to identify the grievance procedure as 'arbitration' is not fatal to its use as a binding mechanism for resolving disputes between the parties. [Citations.] [¶] More important is the nature and intended effect of the proceeding." (*Painters Dist. Council No. 33 v. Moen* (1982) 128 Cal.App.3d 1032, 1036 [181 Cal.Rptr. 17]; accord, *Elliott & Ten Eyck Partnership v. City of Long Beach* (1997) 57 Cal.App.4th 495, 503–504 [67 Cal.Rptr.2d 140].) An arbitration agreement exists where there is "(1) a third party decision maker;

(2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decision maker who is chosen by the parties; (4) an opportunity for both parties to be heard, and (5) a binding decision." (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 684 [57 Cal.Rptr.2d 867]; see *Silva v. Mercier* (1949) 33 Cal.2d 704, 708 [204 P.2d 609] [resolution by trade board is an arbitration]; *Appalachian Insurance Co. v. Rivcom Corp.* (1982) 130 Cal.App.3d 818 [182 Cal.Rptr. 11] [insurance appraisal procedure is an arbitration]; *Parker v. Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895 [173 Cal.Rptr. 639] [resolution by selected accountant(s) is an arbitration]; *Stockwell v. Equitable F. & M. Ins. Co.* (1933) 134 Cal.App. 534 [25 P.2d 873] [insurance appraisal procedure is an arbitration].) The requirement of a neutral, third party decision maker is satisfied when, as here, the party-affiliated decision makers jointly select a neutral to cast any necessary, deciding vote. (*Cheng-Canindin*, at p. 688.) Here, the nature and intended effect of the CBA grievance procedure clarify that the parties agreed to arbitrate.[8]

■ The CBA grievance procedure does not eliminate the right to a jury's determination of important state statutory rights afforded to individual workers unless two conditions are met. (*Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 404–405 [65 Cal.Rptr.3d 903].) "First, we believe that if the FEHA claims of a union member are to be finally resolved by arbitration (with the concomitant loss of a jury of one's peers), the agreement to do so in a CBA must be 'clear and unmistakable.' [Citations.]" (*Camargo, supra*, 86 Cal.App.4th at p. 1018, fn. omitted; accord, *Marcario*, at p. 404.) "Second, the procedures of the arbitration must allow for the full litigation and fair adjudication of the FEHA claim." (*Camargo*, at p. 1018; accord, *Marcario*, at pp. 404–405.) The District never argues there is a "clear and unmistakable" waiver of the judicial forum in the CBA. And, as in *Camargo*, the record in this case "sheds little light on the fairness of the [factfinding procedure], on the extent of discovery that was allowed the parties, or on whether the [fact finders] had any special competence in the adjudication of FEHA claims." (*Camargo*, at p. 1018.) Thus, neither condition has been satisfied here.

■ The District's reliance on *Johnson, Schifando* and *Page* is misplaced; none of those decisions involved a public employee subject to a CBA that vested control in the union over the factfinding component of the grievance

---

[8] The District notes that Education Code sections 87610.1 and 87611 set forth a statutory method for community college employees to grieve improper evaluations, and such grievances are judicially reviewed under Code of Civil Procedure section 1094.5. The existence of this statutory procedure provides no basis for concluding the factfinding process provided for in Level III of the CBA is reviewed by mandate. Had Ortega pursued the relief provided for in the Education Code, *Johnson* and *Page* might well control the result, but he did not.

procedure. Because the CBA provides for arbitration of employee complaints, Ortega's utilization of this grievance process does not bar his state court FEHA actions against the District. In both his demotion and his termination cases, Ortega alleged that he timely filed a complaint with the DFEH, and this is sufficient to plead exhaustion. (*Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708, 721 [17 Cal.Rptr.3d 374] (*Williams*).)

## III. *Ortega's Nonstatutory Claims*

In each of his two lawsuits, Ortega sought nonstatutory relief in addition to the relief he sought under the FEHA. We conclude he was not required to exhaust the available administrative procedures for these nonstatutory claims.

 *Williams* directly addressed the question of whether a public employee who claims employment-related discrimination and asserts both FEHA claims and FEHA-related nonstatutory claims must exhaust an internal administrative remedy with respect to those nonstatutory claims before filing a civil action. The court concluded that "*Schifando*'s exemption must also apply to FEHA-related nonstatutory claims when the resolution of those claims would have a preclusive impact on the FEHA claim." (*Williams, supra*, 121 Cal.App.4th at p. 713.) A contrary result would undermine the employee's right to choose the appropriate forum to litigate an FEHA claim recognized in *Schifando*.

Here, Ortega asserted nonstatutory claims of intentional infliction of emotional distress and negligent supervision in both of his actions against the District, and an additional nonstatutory claim of wrongful termination in violation of public policy in his termination action. Each of these nonstatutory claims is based on the racial discrimination allegedly suffered by Ortega, which is the basis for Ortega's FEHA claims. An adverse finding on the nonstatutory claims that the racial discrimination did not occur or was not the basis for the demotion or termination would have a preclusive impact on Ortega's FEHA claims. (See *Williams, supra*, 121 Cal.App.4th at p. 728.) Therefore each of the nonstatutory claims is FEHA-related and Ortega was not required to exhaust his administrative remedies with respect to them.

The trial court improperly dismissed Ortega's complaints.[9]

---

[9] Ortega made a request for judicial notice in footnote 2 in his opening brief in *Ortega v. Contra Costa Community College Dist.* (A114313). California Rules of Court, rule 8.252(a)(1) states that in order to obtain judicial notice by a reviewing court "a party must serve and file a separate motion with a proposed order." We deny Ortega's request on procedural grounds.

## DISPOSITION

The judgments are reversed and the cases remanded for further proceedings. Costs shall be awarded to appellant.

Jones, P. J., and Needham, J., concurred.