Filed 11/25/15  Samoa Pacific Group v. Crandall CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAMOA PACIFIC GROUP, LLC,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>PHILLIP R. CRANDALL, as Director, etc., et al.,<br><br>          Defendants and Respondents. | A143172<br><br>(Humboldt County<br>Super. Ct. No. CV140466) |

Samoa Pacific Group, LLC (SPG) was cited by Humboldt County Department of Health and Human Services (DHHS), a local enforcement agency charged with enforcing the California Integrated Waste Management Act of 1989 (the Act; Pub. Resources Code, § 40000 et seq.),[1] for allegedly disposing of solid waste on its property without a permit. SPG cleaned up some material on the site but insisted remaining material was not solid waste within the meaning of the Act.  DHHS disagreed, imposed penalties, and ordered SPG to take remedial action on the site.  SPG appealed to a hearing panel as provided under the Act.  Following an interim decision by the panel, SPG petitioned the superior court for a writ of mandate (Code Civ. Proc., § 1085), seeking to restrain DHHS from interfering with SPG's storage of material on the site and arguing DHHS lacked jurisdiction over the material.  The trial court dismissed SPG's petition for failure to exhaust administrative remedies and sanctioned SPG.  We affirm dismissal of the petition for failure to exhaust, but we reverse the imposition of sanctions.

[1] Undesignated statutory references are to the Public Resources Code.

1

# I. STATUTORY FRAMEWORK

The Act is a "comprehensive statewide program for solid waste management." (*Waste Management of the Desert, Inc. v. Palm Springs Recycling Center, Inc.* (1994) 7 Cal.4th 478, 484 (*Waste Management*).) Among other conduct, the Act prohibits operation of a "solid waste facility" without a solid waste facilities permit (§ 44002), and disposal of "solid waste" except at a permitted facility (§ 44000.5). With certain exceptions not applicable here, "solid waste" is defined as "all putrescible and nonputrescible solid, semisolid, and liquid wastes, including garbage, trash, . . . demolition and construction wastes, . . . and other discarded solid and semisolid wastes." (§ 40191.) Regulations define " 'Construction and Demolition Debris' " as "solid waste that is a portion of the waste stream . . . mean[ing] source separated or separated for reuse solid waste and recyclable materials, including commingled and separated materials, that result from construction work . . . ." (Cal. Code Regs., tit. 14, § 17381, subd. (e).) " 'Disposal' " means "the final deposition of solid wastes onto land." (§ 40192, subd. (c).)

The Act may be enforced administratively by a local enforcement agency. (§ 45000–45024; see § 40130.) Enforcement options include an order to take corrective action (§ 45000), an order to cease and desist (§ 45005), and imposition of civil penalties after clear notice of violation and a reasonable opportunity to comply with the Act (§ 45010). The target of an administrative action may challenge the action before a hearing officer or hearing panel of the local enforcement agency (§§ 44307–44308, 44310), and the hearing officer's or panel's decision may then be appealed to the state Department of Resources Recycling and Recovery (CalRecycle) (§ 45030; see § 40110). CalRecycle's decision may be challenged by petition for a writ of mandate filed in the superior court. (§ 45040.)

# II. BACKGROUND

The following facts are taken from SPG's writ petition. We assume the truth of all material factual allegations in the petition unless they are contradicted by attachments to

2

the petition or judicially noticeable facts. (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604.)

SPG owns property in Humboldt County where it plans to develop housing in conjunction with an affiliated entity, Danco Group (Danco). Because of tsunami concerns, the elevation of much of the property will need to be raised with "clean fill," which is material (rock, dirt or both) "that can be put in place and compacted in a precise manner" into engineered fill. About 100,000 cubic yards of clean fill material will be needed, which will be costly. Therefore, Danco gathers and transports clean fill material from other construction jobs to property owned by SPG for future use in the proposed development. Danco does not intend to discard this material.

DHHS is Humboldt County's local enforcement agency with power to enforce the Act, and in August 2012 it issued SPG a "Notice and Order 12-04 for Administrative Civil Penalty Assessment, Cease and Desist, Corrective Action and Compliance" (N&O 12-04) with respect to three property parcels owned by SPG (Property). A "true copy" of N&O 12-04 is attached to the petition:

"In response to two public complaints, [DHHS] staff viewed the [P]roperty on September 2, 2011, February 9, 2012, April 5, 2012 and April 12, 2012. [DHHS] staff observed an unpermitted solid waste disposal site consisting of large quantities of construction and demolition wastes (including concrete, asphalt, and wood waste) and large quantities of soil commingled with solid waste, household waste, waste tires, metal, and fencing. [¶] A Notice of Violation (NOV) was issued on September 2, 2011 . . . requiring that [SPG] immediately discontinue accepting all solid waste and fill materials, and . . . contact the [DHHS] by October 8, 2011 to discuss a work plan for removal of the waste. [DHHS] contacted [SPG] on February 10, 2012 to follow up . . . . [SPG] stated that [it] had placed barriers to stop people from dumping on the site . . . [but] had no intention of immediately removing the waste from the site. [¶] A second NOV was sent . . . on February 29, 2012 requiring that [SPG] prevent further dumping on the site and to either make application to establish the site as a permitted solid waste facility, or provide a work plan to [DHHS] by April 14, 2012 for waste documentation and removal. [¶] On

April 5, 2012, [DHHS] staff observed the site from nearby roads and confirmed that public access to the site was deterred, but numerous piles of solid waste including green material, construction and demolition debris, and waste mixed with soil were still present. On April 12, 2012, staff observed . . . a marked Danco truck dumping what appeared to be green material on one of the subject parcels. . . . [¶] . . . [¶] On April 25, 2012, [DHHS] issued Notice and Order 12-02 to [SPG] to immediately cease and desist all handling of solid waste at the subject property. . . . [¶] On July 9, 2012, [DHHS] received a phone call from a Danco employee . . . who stated that some of the waste had been removed from the site by Danco. [DHHS] staff advised him that no work plan had been received and that a work plan was required prior to further movement of waste. Phone messages were left for [Danco and SPG] . . . . None of these phone calls were returned."

N&O 12-04 declared that "**[w]aste disposed in this manner is a violation of:** [¶] . . . [§] 44002(a)(1) Operating a solid waste facility without a permit [¶] . . . [§] 44000.5(a) Disposal of solid waste at an unpermitted solid waste facility." DHHS imposed $27,181.47 in penalties and cost reimbursements. DHHS also ordered SPG to stop handling solid waste on the Property, submit and complete a work plan, and report back to DHHS on the condition of the Property. N&O 12-04 informed SPG that it had the right to challenge the order before a hearing panel.

SPG alleged in its petition that N&O 12-04 "address[ed] three issues. First, it addressed the accumulation of household and other solid waste that had been dumped on the Property by trespassers. This was a chronic problem with the Property and over time SPG had gathered up this solid waste and disposed of it at the Eureka Transfer Station. Ultimately, this issue was resolved to [DHHS's] satisfaction when SPG . . . securely fenced and blocked access to the Property. Second, [N&O 12-04] addressed the accumulation of grass and other yard trimmings on the Property. . . . Ultimately, this issue was resolved to [DHHS's] satisfaction when SPG removed this material to a green waste composting facility and discontinued this use on the Property. Third, [N&O 12-04] addressed the accumulated clean fill material that was to be used for the construction . . . , claiming that it constituted solid waste within [DHHS's] jurisdiction."

4

SPG requested a hearing before a panel and "asserted that [DHHS] lacked jurisdiction over the clean fill building material since it did not constitute Solid Waste as that term is defined by law." A three-member panel (Panel) heard the matter and issued a memorandum to counsel for SPG and DHHS on October 26, 2012. The memorandum is attached to the petition:

"On October 19, 2012, . . . the [Panel] opened the hearing on the appeal of [N&O] 12-04 . . . . [¶] After evidence and argument . . . , the [Panel] continued the appeal hearing for 60 days. The [Panel] recognizes that the storage of certain types of construction waste for future reuse as construction materials by [SPG] on contiguous properties under their common ownership can be a reasonable proposal, and that a way to allow this should be explored. The [Panel] also recognizes that [DHHS] has a duty under state law to enforce the laws and regulations under their purview and respond when citizen complaints are made. Based upon the evidence and argument presented at the hearing, the Panel believes that the Parties have an interest in resolving the issues identified in the hearing and recognize that cooperation will serve the Public as well as the Parties in achieving a satisfactory resolution of their differences.

"Therefore, the [Panel] requests the Parties use the continuance to communicate and work together in order to return within 60 days and present the [Panel] with a work plan and compliance timeline that would address the following:

"1)  How [SPG] would be able to stockpile materials for the 'clean fill' they anticipate needing for their . . . development. Any stockpiling must be done in compliance with state and local law and with a permit issued by [DHHS] and any other necessary permitting body.

"2)  [SPG] would work with [DHHS] to address and manage, pursuant to state and local law, the issue of the dumping of green waste on the property referenced in [N&O] 12-04.

"3)  [SPG] would agree to regularly inspect the [Property] and remove all waste and debris placed on the property by unknown parties at least once a month to insure [*sic*] that no accumulation occurs.

5

"4)  A financial guarantee, payable to the County of Humboldt, of a sufficient amount to cover the removal of the anticipated stockpiled material and any dumped waste, construction debris or green waste, placed either by [SPG] or unknown individuals in the event [SPG] goes out of business or substantially changes or cancels the portion of the project . . . that would require clean fill. . . .

"In the event the Parties are able to formulate a mutually agreeable work plan and compliance timeline prior to the expiration of 60 days or conversely, if the Parties are deadlocked and unable to reach any accord, they are encouraged to notify the [Panel] so that the continued hearing may be re-convened at an earlier date. [¶] *When the* [*Panel*] *reconvenes on this matter, a final decision shall at that time be made* regarding [N&O] 12-04 unless the [Panel], upon the request of the Parties, agrees to continue the hearing for an additional period of time."  (Italics added.)

On July 15, 2014, SPG filed a petition for a writ of mandate (Code Civ. Proc., § 1085) against individually named persons from the Panel and DHHS, all in their official capacities (collectively Respondents).[2]  SPG alleged that the "Memorandum constitutes a determination on the issue of jurisdiction but not the remedy to be imposed. In the Memorandum, it was determined that the Panel had jurisdiction over the subject clean fill material determining that it was Solid Waste within the jurisdiction of the Respondents.  Said Memorandum lacked any factual basis or reference to the record." SPG prayed for a writ "commanding Respondents to set aside the decision of the [Panel] in this matter, to take no further action to regulate under the Act the clean fill building material that has not been discarded or intended for discarding since such activity exceeds Respondents' jurisdiction, to have the proceedings and decisions of the [Panel] conform to the [California Administrative Procedures Act,] and to require that the

---

[2] The petition named each of the three Panel members (Peter Oringer, Bill Conners, Susan Penn) and DHHS's director (Phillip R. Crandall) and DHHS's supervising environmental health specialist who issued N&O 12-04 (Carolyn G. Hawkins).

6

Respondents cease and desist from the violation of SPG's procedural and substantive due process rights . . . ."

Respondents demurred to SPG's petition.[3] The court sustained the demurrers without leave to amend. The court's written order stated: "1. The Court has no jurisdiction . . . because the matter is premature and not ripe for judicial review. [Citation.] [¶] 2. The Court has no jurisdiction . . . because SPG has failed to exhaust its administrative remedies. [Citation.] [¶] 3. The Petition does not state facts sufficient to constitute a cause of action for traditional mandamus under Code of Civil Procedure section 1085, in that SPG's request is more properly subject to Code of Civil Procedure section 1094.5, which governs administrative mandamus. [Citation.]" The court also specifically found that no final agency decision had been made and therefore SPG was free to continue the administrative proceedings and return to court after it had exhausted its administrative remedies.

DHHS asked the court to sanction SPG and its counsel pursuant to Code of Civil Procedure section 128.7 on the ground that the writ petition was frivolous, as DHHS had argued in its demurrer. After briefing and oral argument, the court granted the motion and ordered SPG and its counsel to pay DHHS $15,982 in attorney fees and costs. The court did not state reasons for its ruling. SPG appeals both the order sustaining the demurrers and the sanctions order.

### III. DISCUSSION

A. *The Petition Was Properly Dismissed for Failure to Exhaust Remedies*

SPG argues the trial court erred in dismissing the action for failure to exhaust administrative remedies. SPG does not dispute its failure to complete the administrative hearing, or to avail itself of available administrative appellate processes. It argues that

---

[3] County counsel for Humboldt County filed separate demurrers of behalf of Panel members Oringer and Conners, as well as a demurrer on behalf of DHHS (Crandall and Hawkins). Conners and DHHS each joined in the other's demurrer, and Oringer joined in the briefs of Conners and DHHS. No evidence appears in the record that Penn, the other member of the Panel, was ever served with the petition.

7

several exceptions to the exhaustion requirement applied:  exhaustion was excused because the issue raised in the petition was outside the agency's jurisdiction, exhaustion would have been futile because the agency's position was already clear, and exhaustion was not required because the proceedings had been rendered fundamentally unfair due to Hawkins's "ex parte" communications with members of the administrative review tribunal.  We affirm the trial court's ruling that administrative exhaustion was required.

We review an order sustaining a demurrer de novo.  (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080.)  "When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"In general, a party must exhaust administrative remedies before resorting to the courts.  [Citations.]  Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.' [Citations.] [¶] 'The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).' " (*Coachella Valley Mosquito and Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella*).)

Although the exhaustion doctrine is often called a " 'jurisdictional prerequisite,' " courts have in fact recognized numerous exceptions to the doctrine.  (*Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816, 1826–1827 (*Public Employment*); see *Coachella, supra,* 35 Cal.4th at p. 1080.)  We consider the exceptions raised by SPG in turn.

8

1. *Outside the Agency's Jurisdiction*

"Under [one] exception, exhaustion of administrative remedies may be excused when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.' " (*Coachella, supra,* 35 Cal.4th at pp. 1081–1082.) This exception does not automatically apply whenever a party challenges an agency's jurisdiction. " 'When pursuing the administrative remedy will cause irreparable injury and the lack of agency jurisdiction clearly appears from considerations that are not within the agency's specialized understanding, exhaustion should not be required. But when the administrative proceeding involves no unusual expense and when the agency's specialized understanding may contribute to a proper determination, a requirement of exhaustion may be desirable.' " (*Public Employment, supra,* 13 Cal.App.4th at p. 1829.) Thus, "[i]n deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative expertise may aid in resolving the jurisdictional issue. ([*Public Employment*,] at p. 1830.)" (*Coachella,* at p. 1082.)

The agency proceeding at issue in *Coachella* was initiated by an unfair labor practice charge filed with Public Employment Relations Board (PERB) by a union against a public employer alleging violations of the Meyers-Milias-Brown Act. The employer argued that PERB had no jurisdiction over the matter because the charge was untimely. While the administrative proceeding was still pending, the employer petitioned the superior court for a writ of mandate and prohibition, and PERB urged dismissal of the petition due to failure to exhaust administrative remedies. (*Coachella, supra,* 35 Cal.4th at pp. 1078–1079.) The Supreme Court concluded exhaustion was excused. On the merits, the case posed a question of statutory interpretation: what limitations period the Legislature intended to apply following an amendment to the Meyers-Milias-Brown Act. (*Id.* at p. 1077.) The Court held that all three of the factors cited above favored excusing the exhaustion requirement. While the employer would not suffer any unusual or irreparable injury if it were required to exhaust (*id.* at p. 1082 ["administrative remedy

9

not inadequate 'merely because additional time and effort would be consumed by its being pursued through the ordinary course of law' "]), the "public interest in obtaining a definitive resolution of this fundamental legal question" meant the first factor favored excusing the exhaustion requirement (*ibid.*). On the second and third factors, the court ruled that the employer had made "a strong and ultimately persuasive argument" regarding the applicable statute of limitations, and "judicial intervention at this stage will not deny us the benefit of the PERB's administrative expertise; the issues are purely legal and of a kind within the expertise of courts . . . ." (*Id.* at pp. 1082–1083.)

In applying the *Coachella* analysis to this case, we begin with the second factor: the strength of SPG's legal argument that the agency lacks jurisdiction over the dispute. We nevertheless decline to undertake a detailed examination of difficult legal questions because "[o]ne of the principal policy concerns of the exhaustion doctrine is judicial efficiency [citation], which cannot be served if the issue of statutory jurisdiction must be fully plumbed in order to determine whether it should be left to the agency in the *first* instance." (*Public Employment, supra,* 13 Cal.App.4th at pp. 1831–1832.) SPG argues the agency lacked jurisdiction because clean fill is not "waste," and it relies on a Supreme Court decision nearly on point. The *Waste Management* court construed a provision of the Act that allows local governments to grant exclusive franchises for "solid waste handling" services. (§ 40059, subd. (a); *Waste Management, supra,* 7 Cal.4th at p. 484.) The question was whether the provision authorized an exclusive franchise in collecting recyclable materials and specifically whether a private company infringed on such a franchise by collecting recyclables from large commercial customers. (*Waste Management*, at pp. 482–483.) The Supreme Court construed the term "waste" as "something discarded 'as worthless or useless,' " and held that "property with a market value to its owner—for example, a recyclable material . . . is not 'waste' until it is discarded." (*Id.* at p. 484.) If recyclables are placed in recycling containers provided by a local government or its franchisee, the recyclables are discarded and collection of the material falls within the exclusive franchise. But if instead the recyclables are sold to a different recycling collector, the recyclables have not been discarded and thus are not

10

waste covered by the exclusive franchise provision. (*Id.* at p. 486.) The court specifically rejected the view that "all items enumerated in section 40191, subdivision (a) [(the Act's definition of 'solid waste')] are waste, regardless of their value and whether they have been discarded . . . . [¶] . . . Discarding is governed by the Act. Selling and other methods of disposition by which the owner receives or donates the value of the recyclable materials are not discarding and are not subject to the Act." (*Waste Management,* at p. 487.)

*Waste Management* lends considerable support to SPG's argument that clean fill, if stored by its owner for future reuse, is not "waste" subject to regulation by CalRecycle or the local enforcement agency. However, the facts of this case are not as clear cut as SPG suggests. At one point, DHHS reported observing "large quantities of construction and demolition wastes (including concrete, asphalt, and wood waste) and large quantities of soil commingled with solid waste, household waste, waste tires, metal, and fencing." Later, DHHS reported observing substantial green material on the Property. SPG does not dispute that the disposal of "household waste, waste tires, metal, and fencing" and of green material came within DHHS's jurisdiction. Instead, it argues that the presence of these types of waste had been resolved and the only remaining dispute involved the presence of clean fill on the Property. DHHS, however, does not concede in N&O 12-04 that the presence of waste on the Property has been completely resolved, and the Panel's memorandum treats the presence of household and green waste on the site as an ongoing or possibly recurring problem. In any event, SPG essentially concedes that the agency *had* jurisdiction over the storage of materials on the Property to the extent that solid waste was present. It is not self evident that the agency automatically lost that jurisdiction simply by virtue of an allegation that solid waste on the Property had been removed.

The petition does not address issues as to ownership of the clean fill material before Danco brought it to the Property. If the owner was not SPG or Danco, the clean fill might be considered "waste" within the scope of the Act (i.e., material that was discarded by its owner) even if Danco and SPG intend to reuse rather than discard it.

11

Similarly, recyclables deposited in a franchisee's recycling containers constitute waste because they are discarded by their owners, even though the franchisee may intend to sell or reuse them. (See *Waste Management, supra,* 7 Cal.4th at p. 486.) The petition alleges that "clean fill material became available and was the property of Danco" before it was transferred to the Property, but does not clearly allege that the clean fill (and the structures or property it came from) was *always* Danco's property and never constituted waste before it came into Danco's possession. Similarly, the petition alleges the material was never "intended to be thrown away," but does not identify *who* never intended it to be thrown away (i.e., the prior owner or Danco and SPG). The petition alleges that "[n]one of this material was ever in the waste stream." This, however, is a legal conclusion that we need not accept as true. (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 220.)

The strength of SPG's legal argument is certainly not as great as might appear at first glance. We cannot say that lack of agency jurisdiction "clearly appears from considerations that are not within the agency's specialized understanding." (*Public Employment, supra,* 13 Cal.App.4th at p. 1829.) The other two *Coachella* factors favor exhaustion. The burden of exhaustion not great: there are only two stages of administrative review and both are governed by strict timelines. (§§ 44310, 45030–45031.) Further, SPG can hardly complain of the burden of delay, as it could have caused the Panel to reconvene in December 2012—60 days after the date of the memorandum—but did not file its petition until July 2014. It appears that the administrative expertise of DHHS and CalRecycle may aid in resolving the jurisdictional question. CalRecycle and its local enforcement agencies have substantial experience with activities that produce large amounts of waste such as construction sites and thus can provide valuable insight into whether the material on SPG's Property is or is not discarded construction or demolition debris and whether SPG and Danco's handling of the material implicates matters within the jurisdiction of the agency (e.g., disposition of other wastes from the origin construction sites and how to prevent material storage sites from becoming dump sites).

In sum, we conclude the exhaustion requirement was not excused on the ground that the subject matter of the dispute was outside DHHS's jurisdiction.

2.     *Futility*

Another exception to the exhaustion requirement applies when " 'it is clear that exhaustion would be futile.' [Citations.]  'The futility exception requires that the party invoking the exception "can positively state that the [agency] has declared what its ruling will be on a particular case." ' " (*Coachella, supra,* 35 Cal.4th at pp. 1080–1081.)  SPG points to the memorandum as evidence that the agency already decided that the storage of clean fill falls within its jurisdiction.  While the memorandum strongly suggests that the Panel believed it had jurisdiction over the storage of clean fill—the memorandum states that "[a]ny stockpiling [of clean fill] must be done in compliance with state and local law and with a permit issued by [DHHS] and any other necessary permitting body"—the memorandum expressly *reserves* final judgment on the issue.  It states that *if* the hearing was reconvened, "a final decision shall *at that time* be made."  (Italics added.)  In any event, the Panel was not the final administrative decision maker.  Its decision was appealable to CalRecycle, which would be the final administrative decision maker.  The memorandum does not, therefore, positively state what the agency's ruling on the dispute will be.

3.     *Unfair Proceedings*

SPG also argues that the administrative process was futile because Hawkins, DHHS's supervising environmental health specialist, had engaged in ex parte communications with members of CalRecycle, which would hear SPG's administrative appeal.  We disagree.

SPG's petition alleges that Hawkins engaged in "ex parte communications" with the members of CalRecycle between January 30, 2013, and January 16, 2014.  The communications included "seeking CalRecycle's advance concurrence in her position that she was acting within her jurisdiction" and were "intended to cause CalRecycle to pre-judge this matter" and to not rely exclusively on the administrative record to make a decision.  On November 19, 2013, Hawkins organized and led a site visit for several

13

members of CalRecycle, during which she "urged" her version of the facts. The petition alleged that these communications violated SPG's rights under the due process clause and the California Administrative Procedures Act and "made SPG's appeal right to CalRecycle a futile remedy."

We assume for purposes of argument that these communications were improper, a conclusion Respondents dispute. Exhaustion was still required. Courts have repeatedly required exhaustion despite claims of agency bias or unfair procedures as long as there is some possibility that the agency will rule in the party's favor. (See *Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 591–592 [agency allegedly was " 'aligned' " with opposing party, a " 'repeat player' " in agency proceedings]; *Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 690–691 [alleged agency bias and prior unfair treatment of the party seeking to avoid exhaustion]; *Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 522 [agency controlled evidence and agency employees had allegedly provided false testimony].)

The trial court properly dismissed the petition for failure to exhaust administrative remedies.

B. *Sanctions*

SPG argues the trial court erred in imposing sanctions pursuant to Code of Civil Procedure section 128.7.[4] We agree.

---

[4] "By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. [¶] (4) The denials of factual contentions are warranted on the evidence or,

"Under Code of Civil Procedure section 128.7, a court may impose sanctions for filing a pleading if the court concludes the pleading was filed for an improper purpose or was indisputably without merit, either legally or factually. [Citation.] . . . A claim is factually frivolous if it is 'not well grounded in fact' and it is legally frivolous if it is 'not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.' [Citation.] In either case, to obtain sanctions, the moving party must show the party's conduct in asserting the claim was objectively unreasonable. [Citation.] A claim is objectively unreasonable if 'any reasonable attorney would agree that [it] is totally and completely without merit.' " (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440, quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) Code of Civil Procedure section 128.7 " ' 'must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution." (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167–168.)

"Ordinarily, a ruling on a motion for sanctions brought under [Code of Civil Procedure] section 128.7 is reviewed under a deferential abuse-of-discretion standard." (*Optimal Markets, Inc. v. Salant* (2013) 221 Cal.App.4th 912, 921, fn. omitted; see *Cooter & Gell v. Hartmarx Corp.* (1990) 496 U.S. 384, 405 ["an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's [Federal Rule of Civil Procedure] Rule 11 determination"]; *id.* at pp. 401–405; *Optimal Markets,* at p. 921 [federal cases construing Fed. Rules Civ.Proc., rule 11, instructive in

---

if specifically so identified, are reasonably based on a lack of information or belief. [¶] (c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence. . . ." (Code Civ. Proc., § 128.7, subds. (b), (c).)

interpretation of Code Civ. Proc., § 128.7 (modeled on rule 11)].)  The standard is deferential due to "the importance of the trial court's close familiarity with the case in evaluating the potential sanctionee's litigation activity."  (*Optimal Markets,* at p. 926.)  However, some cases call for a less deferential standard of review.  For example, "where a question of statutory construction is presented in the course the review of a discretionary decision, such issues are legal matters subject to de novo review."  (*Id.* at pp. 921–922.)  Similarly, "[t]he availability of sanctions under section 128.7 in connection with undisputed facts is a question of law subject to de novo review."  (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591.)  Here, the litigation consisted solely of a writ petition and a demurrer.  The sole ground for the sanction motion was the frivolousness of the petition itself.  The sanctions determination therefore largely overlapped with the demurrer determination.  In ruling on the demurrer, the court was required to assume the truth of all factual allegations not contradicted by attachments to the petition and its ruling was subject to de novo review.  (See *Del E. Webb Corp. v. Structural Materials Co., supra,* 123 Cal.App.3d at p. 604; *Ortega v. Contra Costa Community College Dist., supra,* 156 Cal.App.4th at p. 1080.)  Because the issues involved in the sanction ruling are similar to those involved in the demurrer ruling, we conclude that deference to the trial court on the issue is unwarranted.

In support of the motion for sanctions, DHHS argues the petition was objectively unreasonable because SPG raised no reasonable argument that the memorandum was a final agency decision or that pursuing the administrative procedure would be futile. Moreover, DHHS argues SPG intentionally filed a traditional mandamus petition pursuant to Code of Civil Procedure section 1085 rather than an administrative mandamus petition pursuant to Code of Civil Procedure section 1094.5 because it knew the latter would be untimely under its theory of the case (i.e., that the final agency decision was in October 2012).  Finally, DHHS cites additional allegedly harassing litigation conduct—failing to name indispensible parties, naming individual DHHS employees and Panel members as defendants, and seeking entry of default against a

respondent who had demurred to the petition—to demonstrate that the petition's only purpose was harassment and intimidation.

These arguments are unpersuasive because they do not address SPG's primary legal argument in the writ proceeding: that exhaustion of administrative remedies was excused because the agency was acting outside the scope of its jurisdiction. SPG argued throughout the trial court proceedings that DHHS lacked jurisdiction over SPG's storage of clean fill because clean fill was building material rather than "waste" within the meaning of the Act. Beginning with the petition, SPG set forth the Act's definition of "solid waste" in the Act, argued that clean fill was not solid waste, and asserted that DHHS had "a clear, present and ministerial duty to only act within the scope of their jurisdiction under the Act . . . ." In its opposition to the demurrers, SPG cited *Coachella, supra,* 35 Cal.4th 1072 and argued "Respondents' claim that the clean fill material is within their jurisdiction as 'construction and demolition debris' is obviously not correct," and DHHS therefore had no jurisdiction over SPG's storage of clean fill. At the hearing on demurrer, SPG's lead argument was that the petition sought relief "on the basis that [DHHS] was seeking to regulate building materials . . . [even though] the jurisdiction of the agency is limited to waste and not building materials," and the vast majority of SPG's argument at the hearing was devoted to this issue. In its opposition to sanctions, SPG argued that its petition was not frivolous because the argument that clean fill was outside the agency's jurisdiction was not frivolous. Finally, at the hearing on the sanctions, SPG's sole argument on the merits was: "There is a clear line of authority that states that an agency cannot self-define their jurisdiction, that an individual can collaterally attack . . . an administrative agency's assertion of jurisdiction when there is no jurisdiction to begin with."

DHHS offers no substantive, much less persuasive, argument that it was frivolous for SPG to make this argument. Although we affirm the trial court's rejection of the argument, we do not find the position frivolous. The Supreme Court has affirmed the existence of the exception asserted by SPG to the exhaustion requirement (*Coachella, supra,* 35 Cal.4th at pp. 1081–1082), and SPG's specific argument regarding jurisdiction

17

over "waste" under the Act is also supported by Supreme Court authority (*Waste Management, supra,* 7 Cal.4th 478). That is, SPG had a credible position on the second *Coachella* factor. The third factor was also arguable: it was not self evident that the agency's expertise would materially assist the court on the definition of solid waste. In short, SPG's argument that it was excused from the exhaustion requirement because of the agency's lack of jurisdiction was not frivolous.

All of the allegedly frivolous arguments cited by DHHS in support of the sanctions motion were subsidiary to SPG's primary legal argument in the writ proceeding. The litigation conduct cited by DHHS (erroneously seeking entry of default against one respondent and alleged failure to name indispensable parties) was tangential and insufficient alone to establish an improper litigation purpose in light of the nonfrivolous nature of SPG's main legal argument. DHHS cites no authority for imposition of sanctions based solely on subsidiary arguments or tangential litigation conduct. In our view, there is a material difference between a pleading consisting solely of frivolous arguments and a pleading that rests primarily on a reasonable argument but also includes overreaching arguments that might be deemed frivolous.

We lack the benefit of the trial court's reasoning in deciding to impose sanctions because, contrary to statutory requirements, the court failed to "describe the conduct determined to be a violation of [Code of Civil Procedure section 128.7] and explain the basis for the sanction imposed" when it issued its written order. (*Id.,* § 128.7, subd. (e).) The court also made no substantive comments during argument on the sanctions motion, which might have shed light on its thinking. We note that during argument on the demurrer, the court suggested that exhaustion could never be excused on the ground that the agency lacked jurisdiction over the subject matter, and it never specifically addressed the three-factor test of *Coachella*. The trial court described the Property as a "garbage dump" containing "commingled [waste], full of garbage, unseparated junk from construction sites," even though SPG had pleaded and argued at the hearing that the Property no longer contained anything but clean fill. That is, the court did not assume the truth of the facts pleaded in the petition when it discussed the merits of the demurrer.

DHHS quotes the court's comment about "a dilemma, contradiction" in SPG's position: "If it's not a final ruling . . . it's not ripe for the petition[.] [¶] . . . [¶] [I]f they take a position it is a final ruling, therefore we have a right to file a petition at this point, . . . then they're barred by the statute [of limitations]." The purported "contradiction" applies only to SPG's subsidiary argument that the Panel's memorandum was a final agency decision, a position we agree was frivolous. The comment does not, however, address SPG's primary argument in the writ proceeding, which we find was not frivolous.

In sum, we conclude the trial court could not have reasonably found that SPG's writ petition was frivolous and therefore reverse the order imposing sanctions on SPG.

## IV. DISPOSITION

We affirm the order dismissing the petition and reverse the order imposing sanctions. Each side shall bear its own costs.

19

_____

BRUINIERS, J.

WE CONCUR:

_____

JONES, P. J.

_____

SIMONS, J.

A143172