Filed 5/13/21  Hart v. Hart CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| GUY HART et al., | B291315 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC519025) |
| v. | |
| DON HART et al., | ORDER MODIFYING OPINION (CLERICAL ERROR) [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:*

It is ordered that the opinion filed May 12, 2021 be modified as follows:

On page 37 of the opinion, last line of the second full paragraph remove the "[" between the letters "d" and "e" from the word "shiel[ded" so it reads as "shielded".

The modification does not change the judgment.

---

*MANELLA, P. J.

Filed 5/12/21  Hart v. Hart CA2/4 (unmodified opinion)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GUY HART et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> DON HART et al., <br><br> Defendants and Respondents. | B291315 <br><br> (Los Angeles County Super. Ct. No. BC519025) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Alarcon, Judge.  Affirmed.

Guy Hart, in pro. per.; Sara Hart, in pro. per.; Keiter Appellate Law and Mitchell Keiter for Plaintiffs and Appellants.

Michael T. Stoller and Bruce Adelstein for Defendants and Respondents.

# INTRODUCTION

The individuals in this appeal are respondent Don Hart, his brother appellant Guy Hart, and their mother appellant Sara Hart.[1]  In March 2013, after years of disagreements over businesses started and real property purchased by the Harts, as well as mutual accusations of financial mismanagement and misappropriation, the parties agreed to use family friend Sam Pinchassi as a third-party neutral for a form of alternative dispute resolution.  Don contended the parties intended Pinchassi to act as an arbitrator and issue a final, binding decision, whereas appellants contended Pinchassi was to act only as a mediator and make a non-binding proposal.  However, it is undisputed that in June 2013, Pinchassi issued a document entitled "Arbitration Ruling," which purported to decide the ownership of several pieces of real property and two businesses, and to require appellants to pay Don a certain amount of money.

Two months after the "Arbitration Ruling" issued, appellants filed a complaint against Don, DGH, Carlos Velasquez, and several trusts, regarding issues addressed in the arbitration ruling.  Appellants amended the complaint in February 2014, and in April 2014, respondents moved to confirm the June 2013 arbitration award.  In May 2014, following opposition from appellants who disputed that an

---

[1]    The other respondent is DGH, LLC.  Defendant Carlos Velasquez has not appeared in this appeal.  Because the Harts share a surname, we refer to them by their first names.

arbitration had occurred, the court granted the motion and confirmed the award.  Shortly thereafter, appellants filed a second amended complaint (the operative complaint), adding Pinchassi and his son as defendants.  Appellants accused Pinchassi of fraudulently misleading them into participating in the alternative dispute resolution, and accused Don of transferring to Pinchassi's son, "with the intent to hinder, delay or defraud" appellants, a piece of real property Pinchassi had awarded to Don.

One week before trial, the court found appellants had yet to serve Pinchassi or his son and severed them from the action.  Following a 35-day bench trial conducted over the course of a year, the court entered judgment in favor of respondents, finding most of appellants' claims against Don barred by the res judicata and collateral estoppel effects of the confirmed arbitration award, and the remaining claims unproven.

Appellants now contend the court erred in confirming the arbitration award, in finding their fraud and elder abuse claims barred by res judicata and collateral estoppel, and in severing Pinchassi and his son from the trial.  They further argue that various other events and occurrences, including alleged attorney misconduct by respondents' counsel and guilty pleas by Velasquez and a non-party over a scheme to defraud elders of real property, warrant reversal.

Post-appeal, both appellants and respondents have requested judicial notice of certain documents.  Respondents have also moved for sanctions, contending the appeal is

"frivolous and/or taken solely for the purpose of delay." Lastly, we have received two applications to file amicus briefs, and a motion from respondents to file a supplemental brief.

Preliminarily, we find that appellants have forfeited their arguments on appeal by failing to include any record citations in their opening brief, in violation of California Rules of Court, rule 8.204(a)(1)(C).  Additionally, many of their arguments are forfeited for failure to cite to legal authority.

Moreover, even considering appellants' appeal on the merits, we conclude the court did not err in confirming the arbitration award, that the court properly determined most of appellants' claims were barred by res judicata and collateral estoppel and the remainder were unproven, and that the court was well within its discretion to sever Pinchassi and his son from the trial.  We find appellants' other arguments without merit.  Additionally, we deny both parties' requests for judicial notice because the documents are unnecessary and unhelpful.  We further deny respondents' motion for sanctions because we do not find appellants' appeal frivolous.  Lastly, we deny the applications to file amicus briefs and respondents' motion to file a supplemental brief.

4

### A. *The Parties Engage in Alternative Dispute Resolution*

Though there is sharp disagreement over what form of alternative dispute resolution occurred, and whether Pinchassi issued a binding ruling or a mere proposal, all parties agree that appellants, on the one hand, and Don, on the other hand, were having disagreements over the ownership of several real properties and businesses, and whether appellants had misappropriated or mismanaged Don's money or vice versa. It is further undisputed that in March 2013, Guy sent Don an e-mail regarding the "apparent issues at hand," agreeing that "we will need help in solving these issues," and stating that "as discussed, we will need to go to a Mediator, advisor to solve our differences." He went on to say, **"Anyone that Don wants is ok with me (Shmulik, Glickman, The previous mediator) . . . ."**[2] He emphasized that the parties should **"deal with it like professional adults and solve this once and for all!!!"** Finally, he concluded: **"We will follow What ever the MEDIATOR tells us!!!"** It is also undisputed that Guy and Sara met with Pinchassi at least three times and on June 10, 2013, Pinchassi issued a one-page document entitled "Arbitration Ruling," which appellants received a few days later. Among other things,

---

[2] At trial, Guy testified that Shmulik was a nickname for Pinchassi.

the Arbitration Ruling distributed amongst the three parties some or all of the interest in several pieces of real property and two businesses (including respondent DGH), and provided that Guy and Sara were to pay Don $85,000 and $100,000 respectively.

### B.    *Appellants File a Complaint*

In August 2013, appellants filed a complaint against Don, DGH, Velasquez, and others.[3]  The complaint alleged that appellants and Don were each one-third owners of five pieces of real property (all of which were disposed of by the Arbitration Ruling), and sought to quiet title to those properties, and partition them by sale.  The complaint also requested an accounting regarding certain financial transactions, and alleged that Don owed appellants at least $2,000,000.  In February 2014, appellants amended the complaint, dropping the partition cause of action as well as one of the five pieces of real property, but adding a cause of action for elder abuse, alleging that Don's actions alleged elsewhere in the complaint had damaged Sara in the amount of $2,400,000.

---

[3]    Eleven days after Pinchassi issued the Arbitration Ruling, appellants' counsel sent a letter to Don, accusing Pinchassi of having improperly issued the ruling and insisting none of the parties ever agreed to enter into an arbitration process.

### C.   *Respondents Move to Confirm the Arbitration Award*

In April 2014, respondents filed a motion to confirm the June 2013 arbitration award.  In support of their motion, respondents submitted a declaration from Don, which described "an ongoing dispute" between Don, Guy, and Sara regarding "income distribution from certain real properties and the ownership of assets and the payment of the mortgages."  In order to resolve these disputes, Guy, Sara, and Don all agreed to an arbitration.  Don then described the process of selecting an arbitrator, and attached the March 2013 e-mail sent by Guy agreeing that Pinchassi was an acceptable neutral, and that they would "follow What ever the MEDIATOR tells us!!!"  Don stated that numerous meetings had taken place at least once or twice a week and consumed hundreds of hours, and that all parties had provided Pinchassi with hundreds of pages of documents and responded to Pinchassi's requests for additional information.

Defendants also submitted a declaration from Pinchassi, stating that Sara, Guy, and Don had contacted him in March 2013 to "be the arbitrator and resolve their respective claims."  He declared that all parties indicated that "whatever decision I made would be binding and they each would agree and honor it."  He claimed all three parties were "actively involved and participated in the arbitration process," which took place over a series of weeks and consumed hundreds of hours.  He specifically recalled meeting with Sara and Guy at least thirty times and stated

7

they provided him with hundreds of pages of documents. After he issued the award in June 2013, Sara asked him to change his decision, but he refused.

On May 12, 2014, appellants opposed the motion, contending the parties had agreed to ask Pinchassi to facilitate a resolution of the issues, not decide them. They claimed that after receiving the arbitration award, they contacted Pinchassi and he apologized, stating the title of the document -- "Arbitration Ruling" -- was an error introduced when his son typed the document, and that the "Ruling" was only a proposal. Relying on their assertion that Pinchassi had "acted as a mediator in fact and in deed," appellants also objected to the Pinchassi declaration as incompetent under Evidence Code section 703.5.[4] Appellants claimed the proceedings did not begin until May 2013 (as Sara was out of the country), that they met with Pinchassi only three times, and that Don was not present at those meetings. Appellants submitted declarations from Sara, Guy, and Leemor Hart Lavy (Sara's daughter and Guy and Don's sister) attesting to these facts. Respondents replied,

---

[4]      (Evid. Code, § 703.5 ["No . . . arbitrator or mediator . . . shall be competent to testify, in any subsequent civil proceeding, as to any statement, conduct, decision, or ruling, occurring at or in conjunction with the prior proceeding, except as to a statement or conduct that could (a) give rise to civil or criminal contempt, (b) constitute a crime, (c) be the subject of investigation by the State Bar or Commission on Judicial Performance, or (d) give rise to disqualification proceedings under paragraph (1) or (6) of subdivision (a) of Section 170.1 of the Code of Civil Procedure"].)

8

submitting a supplemental Pinchassi declaration refuting appellants' claims.

At the May 2014 hearing on the motion, appellants' counsel made a conditional request for an evidentiary hearing: "If it would be helpful to this court, we'd ask the court to set this for evidentiary hearing or even allow the plaintiffs to take the stand right now." Earlier in the hearing, appellants had indicated they wanted to question Pinchassi regarding his statements that he spent "hundreds of hours" on the arbitration. They also wanted to inquire further into Don's sale of 947 Wilcox (a piece of disputed real property Pinchassi had awarded him) to Pinchassi's son, which appellants' counsel stated she had learned of "[i]n deposition two days ago." The court did not specifically respond to counsel's conditional request, and took the matter under submission.

Four days later, the court granted the motion to confirm the arbitration award, impliedly denying the request for an evidentiary hearing. Acknowledging that respondents bore "the burden of proving the existence of an agreement to arbitrate . . . ." and that the parties had presented contradictory characterizations regarding the proceedings, the court "resolve[d] the conflicts in the evidence to find that the parties agreed to, and participated in binding arbitration, or, alternatively, binding mediation." The court then stated it would sign a proposed judgment "which confirms the arbitration award as made . . . ."

9

In June 2014, at appellants' request, the court issued a statement of decision, ruling there was a preponderance of evidence to support the finding that the parties had engaged in an arbitration. The court pointed to: (1) the fact that Pinchassi issued a document entitled "'Arbitration Award'";[5] (2) Pinchassi's declaration attesting that both parties had told him they trusted him to act as a fair arbitrator and to issue a binding ruling; and (3) Don's declaration, which was "supportive of finding an arbitration agreement." Regarding the sale of 947 Wilcox, after finding that the evidence submitted regarding the sale (an uncertified deposition transcript) was inadmissible, the court stated that even assuming admissibility, the evidence demonstrated that the "arbitrator had nothing to do with the sale of property to his son, and so pre-award arbitrator bias was not revealed."

The same day the court issued its statement of decision, appellants moved for reconsideration. While largely reiterating previous arguments, appellants additionally alleged that in May 2013 (two months after he had sent the e-mail agreeing to abide by "What ever the MEDIATOR tells us!!!" and one month before the issuance of the arbitration award), Guy had prepared a "mediation agreement" signed by Guy, Sara, and Pinchassi (but not Don), which reflected that Pinchassi was to act as a

---

[5]     It was actually entitled "Arbitration Ruling."

mediator.[6]  Appellants also argued that Don's deposition
(taken two days before the motion to confirm was heard)
revealed that he had been unaware of the difference between
an arbitrator and a mediator when the parties were
discussing alternative dispute resolution, and that weeks
after the Arbitration Ruling was issued, Don transferred to
Pinchassi's son title to 947 Wilcox.[7]  The court denied the
motion for reconsideration, finding both that appellants
failed to demonstrate why the new evidence "could not with
diligence have been filed with the prior and supplemental
papers," and that even considering the new evidence, there
was "other substantial evidence supporting award
confirmation."  The court reaffirmed "its prior rulings
confirming an arbitration award."

On the same day the court denied the motion for
reconsideration, appellants moved for relief under Code of

---

[6]     At deposition, Pinchassi denied ever seeing or signing the
"mediation agreement."  At trial, respondents presented expert
testimony that the signature attributed to Pinchassi was a
forgery; appellants presented expert testimony that it was
genuine.

[7]     The excerpts from the uncertified rough deposition
transcript that appellants submitted contained testimony from
Don that he wanted a third party who would issue a ruling, that
he sold the property to a trust managed by Pinchassi's son for the
market price of $700,000 because it was about to be foreclosed
upon, and that he never discussed this property with Pinchassi's
son until July 2013.

11

Civil Procedure section 473, subdivision (b). In October 2014, the court denied the motion.

### D. *Second Amended Complaint*

Three days later, appellants filed a second amended complaint (SAC), naming as defendants Don, DGH, Carlos Velasquez, Pinchassi, and Pinchassi's son. The only specific allegation concerning Velasquez was that he was a co-trustee of two trusts "which allegedly hold an interest in the PROPERTIES at issue in this litigation."

The SAC contained eight causes of action. The first and second causes of action (quiet title and declaratory relief) asked the court to declare that Guy, Sara, and Don each had a one-third interest in four pieces of real property.[8] The third and fourth causes of action (accounting and money had and received) alleged that respondents misappropriated some amount of money. The fifth cause of action (elder abuse) alleged that respondents stole Sara's interest in the four pieces of real property, damaging her in the amount of $2,400,000. The sixth cause of action (fraud) was pled against Pinchassi only, and essentially accused him of deceiving appellants about the nature of the alternative dispute resolution they would be engaging in. The seventh cause of action ("Actual Fraud") was pled against Pinchassi's son and Don, and alleged that Don transferred 947 Wilcox to

---

[8]     All four properties were listed in the Arbitration Ruling.

12

Pinchassi's son "with the intent to hinder, delay or defraud" appellants. Finally, the eighth cause of action (breach of fiduciary duty) accused Don of breaching his fiduciary duty to appellants by committing the acts alleged in the complaint. The case was eventually set for trial in May 2015.[9]

### E.  *Trial*

In early May 2015, Pinchassi and his son were severed from the upcoming trial after the court ordered all unserved defendants to be severed. One week later, a bench trial began, spanning eleven months and consuming at least 35 days of court time. Much of the testimony related to differing versions of the family's history in starting businesses and buying properties, whose money was used for these endeavors, and who was at fault for financial losses or mismanagement. Regarding the arbitration, Don testified that it covered all the issues raised in appellants' SAC. He also testified that after the arbitration, he sold 947 Wilcox, which was in foreclosure, to a trust managed by Pinchassi's son for market price, and that he had never spoken with Pinchassi's son prior to the transaction.

---

[9]     In December 2014, Don filed a cross-complaint against appellants. Because the court found in favor of appellants (cross-defendants) on the cross-complaint and no one has appealed that ruling, we omit discussion of the cross-complaint.

In January 2017, the court issued a statement of decision in favor of respondents on the SAC.  It found the first through fifth and eighth causes of action were barred by res judicata and collateral estoppel due to the confirmed arbitration award.  It found the sixth cause of action for fraud was severed because it was pled only against Pinchassi, a severed party.  As to the seventh cause of action for "Actual Fraud," the court found appellants could have raised the sale of 947 Wilcox at the arbitration but that in any case, Don was the owner and title holder of 947 Wilcox prior to the arbitration award, and thus had the right to sell the property to Pinchassi's son.  Moreover, the court found appellants had failed to prove Pinchassi "was improperly influenced or considered evidence outside the Arbitration Proceeding."  The court noted that Pinchassi and his son had been severed from the trial and the court had found "no Actual Fraud."

In April 2017, appellants requested that both Pinchassi and his son be dismissed from the SAC.  In May 2018, the court entered a judgment confirming the June 2013 arbitration award, expressly finding no evidence of fraud to "overcome the res judicata effect of the Arbitration Award." Appellants timely appealed.

### F.  *Post-Appeal Motions*

#### 1.  Judicial Notice

In December 2019, appellants asked us to judicially notice a sentencing order for non-party Michael Henschel, and plea agreements and indictments for Henschel and Velasquez, regarding a scheme to defraud elders of real property.  They argue these documents demonstrate "Respondents Don, [Michael] Stoller (respondents' counsel), Velasquez, Henshel [*sic*] et al. have a premeditated, proven and systematic *modus operandi* of defrauding people . . . ."

In January 2020, respondents asked us to judicially notice various pleadings from other cases involving Guy and Sara.  These included pleadings from ten other cases in which Guy and/or Sara Hart were a party, including three they filed against their former counsels in this case.

#### 2.  Sanctions

In January 2020, respondents moved for sanctions "on the grounds that the appeal is frivolous and/or taken solely for the purpose of delay."

#### 3.  Additional Briefs

On October 16, 2020, fifteen days after appellants filed their reply brief, we received two applications to file amicus briefs:  one from "Protecting Our Elders" and one from "Mediation Center of Los Angeles."  In November 2020,

15

respondents opposed these applications, arguing they were untimely and failed to make certain required disclosures.

On April 5, 2021, more than six months after appellants filed their reply brief, we received from respondents a motion to file a supplemental brief addressing new arguments and authorities raised in the reply brief.

## DISCUSSION

### A. *Appellants Have Forfeited Their Arguments on Appeal*

An appellant's brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.) "Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority." (*Ibid.*)

Appellants' opening brief is wholly devoid of citations to the record. Therefore, they have forfeited all points urged on appeal. They have additionally forfeited arguments

16

unsupported by pertinent legal authority.[10]  Moreover, they have independently forfeited other arguments by failing to raise them below, failing to raise them in their opening brief, or failing to adequately summarize the evidence.  Finally, as explained below, we reject appellants' arguments on the merits.

### B.    *The Court Did Not Err in Confirming the Arbitration Award*

In May 2014, recognizing that respondents had the burden of proving the existence of an agreement to arbitrate, the court "resolve[d] the conflicts in the evidence to find that the parties agreed to, and participated in, binding arbitration, or, alternatively, binding mediation."  The court granted the motion to confirm and stated it would sign a proposed judgment "which confirms the arbitration award as made . . . ."

Appellants argue the court erred both procedurally and substantively in granting the motion.  Procedurally, appellants complain that:  (a) they were denied an opportunity to address the evidence supporting the motion to confirm; and (b) they were unable to conduct discovery.  Substantively, they argue:  (a) the arbitration award was not entitled "Arbitration Award"; (b) there can be no arbitration

---

[10]    Respondents' brief identified these deficiencies and argued appellants' appeal should be denied on this basis.  Appellants' reply did not address the argument.

17

award without a written arbitration agreement; (c) they never agreed to arbitrate; (d) the issues to be arbitrated were unspecified; (e) the proceedings that occurred did not resemble an arbitration; (f) the alleged arbitrator was not a neutral party; (g) the court erred in failing to apply the statute of frauds though the arbitration award disposed of real property; and (h) the court's confirmation of the award violated the "Elder Adult and Disability Civil Protection Act."[11]

In considering an appeal from a judgment confirming an arbitration award, "[t]o the extent the trial court made findings of fact in confirming the award, we affirm the findings if they are supported by substantial evidence. [Citation.]  To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo."  (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11-12.)  "[I]n reviewing a judgment confirming an arbitration award, we must accept the trial court's findings of fact if substantial evidence supports them, and we must draw every reasonable inference to support the award."  (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1087.)

---

[11]    Appellants presumably intended to refer to the "Elder Abuse and Dependent Adult Civil Protection Act," codified at Welfare and Institutions Code section 15600 et seq.

### 1.     Alleged Procedural Errors

### (a)    Evidentiary Hearing

Appellants contend the court erred in "failing to give us an opportunity to confront evidence, or cross-examine witnesses against us" before confirming the arbitration award -- in other words, they claim the court should have held an evidentiary hearing before ruling on the motion to confirm.  But appellants did not request an evidentiary hearing until the court was hearing the motion, and then requested one only "[i]f it would be helpful to this court."  In granting the motion to confirm, the court impliedly denied the request.

We review the court's denial for abuse of discretion.  As our Supreme Court observed in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413-414, in deciding whether to confirm an arbitration award, "facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion . . . .  [¶] . . . .  There is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony."

Appellants fail to explain how the court abused its discretion in denying their conditional request for an evidentiary hearing, and we independently discern no abuse.  First, appellants requested a hearing only "[i]f it would be helpful" to the court.  The trial court evidently determined it

19

would not.  All parties -- Guy, Sara, and Don -- had submitted declarations setting forth their version of events, and nothing suggests their live testimony would have deviated from their declarations.  And while appellants may have wished to question Pinchassi about the "hundreds of hours" he allegedly spent on the arbitration, the court could reasonably have concluded that whether the amount of time described was accurate or hyperbole had no bearing on whether the parties had participated in binding arbitration resulting in an arbitration award.  Additionally, the court's decision that no further information about the sale of 947 Wilcox to Pinchassi's son was needed was reasonable in light of appellants' failure to file a pleading to vacate the arbitration award within 100 days of its service, which, as discussed below, forfeited their ability to argue arbitrator corruption or fraud without equitable relief from the court (which they had not sought).  The court did not abuse its discretion by denying appellants' eleventh-hour request for an evidentiary hearing.

### (b) Discovery

Appellants contend they had "no opportunity to conduct discovery" before the court confirmed the award.  The record refutes this claim.  Appellants filed their initial complaint in August 2013.  Respondents did not file the motion to confirm until April 2014, and appellants did not

file their opposition until mid-May.  Appellants had over eight months to conduct discovery.

### 2. Alleged Substantive Errors

### (a) Title of Arbitration Award

Appellants argue the award must be vacated because "the one page document Respondents submitted to the trial court [as the arbitration award] read: '[A]rbitration [R]uling,' not 'Arbitration Award,' as required for a valid arbitration award."  Appellants neither cite authority nor offer reasoned argument for this claim and it is therefore forfeited. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 ["'an appellate brief "should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration"'"]; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["We are not required to examine undeveloped claims or to supply arguments for the litigants"].)  In any case, Code of Civil Procedure section 1283.4 provides that "[t]he award shall be in writing and signed by the arbitrators concurring therein.  It shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy."  There is no requirement that the award be entitled "Arbitration Award."

21

### (b) Lack of Written Agreement to Arbitrate

In their opening brief, appellants rhetorically ask: "How can the court - without a written and signed agreement to arbitrate - enforce an arbitration ruling when the latter cannot exist without the former?" To the extent appellants suggest an arbitration award cannot exist without a written arbitration agreement, the argument is forfeited as undeveloped. (*Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at 52.) In any case, the California Arbitration Act defines "'Award'" to include "an award made pursuant to an agreement not in writing," thus establishing that an oral arbitration agreement may result in an enforceable award. (Code Civ. Proc., § 1280, subd. (b); *Sampson v. Parking Service 2000 Com., Inc.* (2004) 117 Cal.App.4th 212, 226 ["A settled rule of statutory construction requires that we give effect and meaning to all parts of the law if possible and to avoid an interpretation that renders statutory language superfluous"]; see also *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 677 ["once the parties have arbitrated and a written award is made, the courts can enforce the award even if the underlying agreement to arbitrate w[as] oral"]; *Horn v. Gurewitz* (1968) 261 Cal.App.2d 255, 258-259 ["no doubt that the purpose of . . . [defining 'award' to include 'an award made pursuant to an

agreement not in writing'] was to make enforceable written awards made pursuant to an oral agreement"].)[12]

### (c)   Agreement to Arbitrate

Appellants argue they "never agreed either out-loud or in writing to binding arbitration," "there was no meeting-of-the-minds as required for a valid agreement to arbitrate," and they lacked "the power to select a neutral, qualified and licensed arbitrator . . . ."  Because the court found that appellants had agreed to arbitration, we interpret appellants' argument as a substantial evidence challenge to the court's finding.

---

[12]   In their reply brief, appellants attempt to bolster their argument by citing to *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1220 (*Toal*).  First, "[a]n appellant cannot salvage a forfeited argument by belatedly addressing the argument in its reply brief."  (*SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 573, fn. 18.)  Regardless, appellants' reliance on *Toal* is misplaced.  *Toal* held that "[t]he signature of defendants' attorney on the arbitration stipulation, standing alone, did *not* constitute substantial evidence that defendants agreed to arbitrate . . . ."  (*Toal*, *supra*, at 1213.)  In this context, the court stated it could not confirm an award "without first finding the parties agreed in writing to arbitrate their dispute."  (*Id.* at 1220.)  We interpret this statement to mean that an agreement to arbitrate signed only by a party's attorney is insufficient to bind the party.  *Toal* did not involve an oral agreement to arbitrate, expressly contemplated by statute.  (Code Civ. Proc., § 1280, subd. (b).)

23

"A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) Appellants have failed to do so. Accordingly, we deem their substantial evidence challenge forfeited. (*Ibid.* [failure to discuss all evidence forfeits substantial evidence challenge].)

Moreover, we would reject the challenge on the merits. "An arbitration agreement exists where there is '(1) a third party decision maker; (2) a mechanism for ensuring neutrality with respect to the rendering of the decision; (3) a decision maker who is chosen by the parties; (4) an opportunity for both parties to be heard, and (5) a binding decision.'" (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1084-1085.) "The requirement of a neutral, third party decision maker is satisfied when, as here, the party-affiliated decision makers jointly select a neutral to cast any necessary, deciding vote." (*Id.* at 1085.)

Substantial evidence supports the finding that Pinchassi was a third-party decisionmaker selected by all parties, that all parties had the opportunity to be heard, and that Pinchassi issued a binding decision. Apart from Don's testimony concerning the events leading up to the arbitration, it is undisputed that Guy sent Don an e-mail agreeing that they needed a third party to resolve their differences, confirming that Pinchassi was an acceptable third party, and stating in no uncertain terms that the

24

parties would do whatever the third party decreed.[13]  It is equally undisputed that Pinchassi issued an "Arbitration Ruling," addressing the properties and businesses the ownership of which was in dispute.  This evidence was sufficient to support the court's finding that the parties agreed to arbitration.  Appellants' arguments to the contrary amount to no more than a disagreement with the court's resolution of the conflicting evidence.  The trial court reasonably credited respondents' evidence over appellants' evidence, as it was entitled to do.  We, in contrast, do not reweigh the evidence:  "'[w]hen two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.'"  (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)[14]

---

[13]  In their reply brief, appellants make much of the fact that the third party referenced was termed a "mediator" and not an "arbitrator."  However, the e-mail concluded with the exhortation to "deal with it like professional adults and solve this once and for all!!!" and the representation that "We will follow What ever the MEDIATOR tells us!!! [*sic*]"  Taken as a whole, it is reasonable to conclude appellants intended to have a neutral third party decide the issues.  "'[T]he failure of the agreement to identify the grievance procedure as "arbitration" is not fatal to its use as a binding mechanism for resolving disputes between the parties.  [Citations.]  [¶]  More important is the nature and intended effect of the proceeding.'"  (*Ortega v. Contra Costa Community College Dist.*, *supra*, 156 Cal.App.4th at 1084.)

[14]  In their reply brief, appellants argue there is no evidence that *Sara* agreed to arbitrate, as it was only Guy who sent the

(*Fn. is continued on the next page*.)

25

Appellants also contend the court erroneously confirmed the arbitration award based on Pinchassi's "unauthenticated and inadmissible declarations." Specifically, appellants argue the court could not rely on Pinchassi's declarations because he allegedly admitted he did not speak, read, or write English and, at a deposition taken a year after the award was confirmed, he allegedly claimed his declarations were forgeries.

First, while appellants objected to Pinchassi's initial declaration on several grounds, his alleged inability to speak, read, or write English was not one of them. Second, while in deposition, Pinchassi initially testified the signature on the January 2014 declaration was not his, he later corrected this testimony to affirm his signature on the document.[15] Third, as Pinchassi was not deposed until a year after the court confirmed the arbitration award, his testimony was self-evidently not before the court when it

_____

e-mail to Don. "As this argument was first raised in the reply brief, it is forfeited." (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles* (2015) 239 Cal.App.4th 918, 926, fn. 7.) It is also forfeited because in opposing the motion to confirm arbitration, appellants never argued that Sara did not agree to participate in the proceedings, only that the proceedings were to be a mediation, not an arbitration.

[15] While Pinchassi at one point testified he did not know what the January 2014 declaration was, he also repeatedly testified that due to various medical ailments, he could hardly remember things that happened six months ago, let alone two years ago.

26

ruled on the motion to confirm the award. Finally, even without Pinchassi's declarations, the evidence was sufficient to justify the court's finding that the parties agreed to arbitrate. Don's declaration attesting to the manner in which the agreement to arbitrate was reached and the arbitration was conducted, Guy's unequivocal e-mail acknowledging the need to resolve the issues between the parties, declaring Pinchassi to be an acceptable neutral, and committing to abide by the neutral's decision, and the fact that Pinchassi served a document entitled "Arbitration Ruling" that, in fact, disposed of the various properties and businesses that were the subjects of the parties' dispute constitute substantial evidence that the parties agreed to arbitrate.[16]

---

[16] In their reply brief, appellants belatedly argue that Pinchassi's declarations are incompetent under Evidence Code section 703.5, and contend that *Trabuco Highlands Community Assn. v. Head* (2002) 96 Cal.App.4th 1183 mandates reversal because the court relied on Pinchassi's declaration to find the parties had agreed to arbitrate. As this argument was first raised in the reply brief, it is forfeited. (*L.A. Taxi Cooperative, Inc. v. The Independent Taxi Owners Assn. of Los Angeles*, *supra*, 239 Cal.App.4th at 926, fn. 7.) Moreover, an exception to Evidence Code section 703.5's prohibition regarding arbitrator testimony "permits an arbitrator to provide testimony that 'addresses [a] charge of bias, partiality or improper conduct.'" (*Cox v. Bonni* (2018) 30 Cal.App.5th 287, 314, citing *Betz v. Pankow* (1993) 16 Cal.App.4th 919, 927 [exception potentially implicated where trial proceedings concerned arbitrator's purported misconduct].) Even before the initial complaint was filed, appellants accused Pinchassi of improperly issuing an
(*Fn. is continued on the next page.*)

27

### (d)  Issues to Be Arbitrated

Appellants argue they "were never given the opportunity to define the scope of what could be arbitrated . . . ." But in opposing the motion to confirm, appellants argued only that Pinchassi "was asked by the parties collectively to help them resolve their differences.  Prior to beginning the mediation, PINCHASSI knew and confirmed with SARA and GUY that his function was to facilitate a resolution of the issues and not to decide them."  In other words, appellants did not contend that the arbitration issues were unidentified or that they lacked the opportunity to specify them, only that Pinchassi was not to decide them.  Appellants have therefore forfeited this argument by failing to raise it below.[17]  (See *Premier Medical Management*

---

arbitration award.  They continued that theme in opposing respondents' motion to confirm the award.  In any event, unlike in *Trabuco*, the court here considered not only Pinchassi's declarations, but also Don's declaration, Guy's e-mail, and the fact that Pinchassi issued an "Arbitration" ruling.  As *Trabuco* recognized, "If the trial court had simply decided whether the arbitration was binding based on the declarations of the parties concerning what was said at the arbitration hearing, we might simply affirm the ruling by concluding it was a matter of credibility for the trial court to decide."  (*Trabuco, supra*, 96 Cal.App.4th at 1190.)

[17]  Moreover, the scope of the arbitration was apparent.  Guy's e-mail to Don referenced the "apparent issues at hand," agreed that "we will need help in solving these issues," and exhorted the parties to "solve this once and for all!!!"  And in their opening brief on appeal, appellants argue Pinchassi was helping solve a
*(Fn. is continued on the next page.)*

28

*Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163
Cal.App.4th 550, 564.)


### (e)    Conduct of Arbitration

Appellants argue the court erred in confirming the
arbitration award because Don, Guy, and Sara were never
present at the same time before Pinchassi, Pinchassi failed
to make "any sort of opening statement," appellants were
denied "an opportunity to present evidence to support their
case," and Pinchassi did not present appellants "with any
evidence to support Don's position . . . ."

Appellants cite no authority for the proposition that an
arbitration requires all parties to be present at the same
time.  In fact, there is no requirement that an arbitrator
meet with the parties at all.  (See *Schlessinger v. Rosenfeld,
Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105
[declining to find "that an arbitrator [must] always resolve
disputes through the oral presentation of evidence or the
taking of live testimony"].)  Nor is there any authority that
the arbitrator is required to make an opening statement, or
justify his decisions to the litigants.  Furthermore,
appellants admitted that they met with Pinchassi at least

---

dispute "regarding properties we owned jointly as part of our
family business."  Thus, it is apparent that the parties
understood the issues to be resolved, and that these issues
included disposition of the real property and business interests
referenced in the Arbitration Ruling.

three times -- they did not explain why they could not have presented their evidence at those meetings.

### (f)    Arbitrator Fraud/Corruption

Appellants argue the court erred in confirming the arbitration award because Pinchassi "was not neutral due to his undisclosed prior business relationship with Don, and because [Pinchassi] had a vested interest in the outcome of how the properties were distributed." Appellants have forfeited any such argument by failing to make it within 100 days of the service of the arbitration award.

Code of Civil Procedure section 1286.2, subdivision (a), provides that "Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following" and lists six grounds under which an arbitration award may be vacated. Several grounds relate to fraud or corruption of the arbitrator. (Code Civ. Proc., § 1286.2, subds. (a)(1)-(3).) However, section 1286.4 provides that "the court may not vacate an award unless: [¶] (a) A petition or response requesting that the award be vacated has been duly served and filed; or [¶] (b) A petition or response requesting that the award be corrected has been duly served and filed . . . ." Such a petition or response must be served and filed no later than 100 days after service of the arbitration award. (Code Civ. Proc., § 1288.) Failure to do so deprives the court of the ability to consider challenges made under Code of Civil Procedure section 1286.2. (*Eternity Investments, Inc. v.*

30

*Brown* (2007) 151 Cal.App.4th 739, 742 [when party failed to "bring a timely petition or response to correct or vacate the [arbitration] award, the trial court had no choice but to disregard defendants' challenge [under section 1286.2] and 'confirm the award as made'"]; see also *Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 659 ["A party who fails to timely file a petition to vacate under section 1286 may not thereafter attack that award by other means on grounds which would have supported an order to vacate"]; *Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1212 [100-day limit is jurisdictional].)  Because appellants never brought a petition to vacate the arbitration award, and their response to the motion to confirm the award was filed and served more than 100 days after service of the arbitration award, appellants forfeited any argument that the award should be vacated under any of the grounds specified in Code of Civil Procedure section 1286.2.[18]

---

[18]    While a litigant may seek relief from the failure to file a petition to vacate the award within the requisite deadline under the court's equitable power, appellants do not claim to have sought such relief.  (*Eternity Investments, Inc. v. Brown, supra,* 151 Cal.App.4th at 746 ["a trial court may exercise its equitable power to grant relief if the deadline expires due to extrinsic mistake or fraud"].)  In any event, the court eventually found, after 35 days of trial, that appellants had failed to show Pinchassi was improperly influenced or that he considered evidence outside the arbitration.

### (g)	Statute of Frauds and Elder Abuse

Appellants contend the court erred in failing to "apply the Statute of Frauds, California Civil Code section 1624, to a situation involving the arbitration of disbursement of real property without proper written agreement." They further argue the award should be vacated "because it was procured via illegal conduct in violation of Elder Adult and Disability Civil Protection Act (EADACPA) [*sic*]."

Preliminarily, appellants have forfeited these arguments by failing to raise them when opposing the motion to confirm the arbitration award. (See, e.g., *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*, *supra*, 163 Cal.App.4th at 564.) Regardless, the statute of frauds bars an oral agreement "for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein." (Civ. Code, § 1624, subd. (a)(3).) An agreement to arbitrate is not such an agreement, and appellants present no authority to the contrary. Additionally, it is unclear why appellants claim the agreement to arbitrate violated the EADACPA. By failing to develop the argument on appeal, they have forfeited it. (*Allen v. City of Sacramento, supra,* 234 Cal.App.4th at 52 ["We are not required to examine undeveloped claims or to supply arguments for the litigants"].)

## C. *The Court Did Not Err in Finding Most of Appellants' Claims Barred by the Confirmed Arbitration Award*

The court found that most of appellants' claims were barred by the res judicata and collateral estoppel effects of the confirmed award.[19] On appeal, appellants contend their fraud and elder abuse claims were erroneously dismissed under res judicata because "the alleged arbitration itself was the fraud and elder financial abuse . . . ." They also contend that because the transfer of 947 Wilcox to Pinchassi's son occurred after the arbitration, the court erred in finding they could have raised the issue during the arbitration. While appellants are correct that the transfer of 947 Wilcox could not have been raised in the arbitration, we conclude this mistaken finding was harmless. We disagree with the remainder of appellants' contentions.

### 1. Fraud

The operative complaint contained two fraud causes of action. In the sixth cause of action for fraud, Pinchassi was the only named defendant. The court severed any claims against him, and appellants later dismissed him. Therefore, the court's judgment could not have encompassed this claim

---

[19] The one exception was the sixth cause of action for fraud, which the court noted was pled only against Pinchassi, a severed party.

and, as appellants have dismissed Pinchassi, any issues regarding this cause of action are moot.

The seventh cause of action ("Actual Fraud") was pled against both Don and Pinchassi's son. This cause of action alleged that despite appellants' interest in 947 Wilcox, Don transferred 947 Wilcox to Pinchassi's son after the Arbitration Ruling "with the intent to hinder, delay or defraud" appellants. While it is unclear what cause of action appellants intended to allege, the court understood the claim to be that Pinchassi awarded 947 Wilcox to Don to benefit Pinchassi's son and with the intent to defraud appellants. Although the court erred in stating appellants could have raised this issue in the arbitration proceeding -- the sale occurred after the arbitration -- the court further found that Don was the rightful owner of 947 Wilcox prior to the arbitration award and thus had the right to sell the property. The court additionally found appellants had failed to show Pinchassi was improperly influenced or considered evidence outside the arbitration. It therefore concluded no "Actual Fraud" had been proven against Don.[20] Any error in claiming this cause of action could have been raised before the arbitrator is thus harmless, because the court independently found appellants had failed to demonstrate fraud, and substantial evidence supports that finding.

---

[20] This finding is supported by Don's testimony that he sold 947 Wilcox to a trust managed by Pinchassi's son for market price.

34

### 2. Elder Abuse

Contrary to appellants' claim on appeal that "the alleged arbitration itself was the . . . elder financial abuse", their fifth cause of action for elder abuse alleged only that respondents stole Sara's interests in four pieces of real property, damaging her in the amount of $2,400,000 -- there is no allegation that the arbitration itself constituted elder abuse. It is undisputed that all four pieces of real property were addressed by the Arbitration Ruling. Further, the Arbitration Ruling provided that Sara was to pay Don $100,000, and Don testified that all the allegations included in this cause of action were addressed in the arbitration. The court did not err in finding the elder abuse claim stated in the SAC was, or could have been, raised and decided in the arbitration.

### D. *The Court Did Not Err in Severing the Causes of Action Against Pinchassi and His Son*

Appellants argue the court erred in severing the causes of action against Pinchassi and his son because the claims against them and Don were "inextricably intertwined." "[A] trial court has broad discretion to consolidate or sever causes of action and will not be reversed on appeal except for an abuse of discretion." (*Schonfeld v. City of Vallejo* (1975) 50 Cal.App.3d 401, 418.) Given that the case had already been pending for over 18 months, the trial court's decision to sever

35

unserved defendants was reasonable. To the extent appellants contend the severance prejudiced them, they provide neither argument nor authority to support that contention. Severing the Pinchassis would not have prevented appellants from calling them as witnesses or from presenting any evidence relating to them to prove liability against respondents. The court did not abuse its discretion by severing the Pinchassis.

### E. *Appellants' Other Arguments Are Unavailing*

#### 1. Attorney Stoller's Acts

Appellants accuse respondent's counsel Stoller of several improprieties, including that he bullied Sara on the stand, misled or lied to the court, and tampered with evidence. They argue this "gross misconduct" warrants a mistrial.

Preliminarily, appellants have forfeited this argument because the record discloses no request for a mistrial made below. (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*, *supra*, 163 Cal.App.4th at 564.) Additionally, appellants fail to cite any portion of the record demonstrating bullying, and our independent review revealed only Stoller's zealous representation of his client. While the record is replete with Stoller's objections and colloquy with opposing counsel and the court, there is no evidence the court considered Stoller's comments as factual

36

evidence.  Finally, nothing in the record suggests Stoller tampered with any evidence.[21]

## 2.  Other Irrelevant Contentions

Appellants also argue that we should reverse because: (a) Velasquez and non-party Henschel allegedly pled guilty to a scheme to defraud elders of real property; (b) Stoller was "mentioned" in the criminal indictment of Velasquez and Henschel, and was at one point suspended by the State Bar; and (c) Stoller "shielded" Velasquez (whom he was representing in another criminal matter) by lying to the court regarding Velasquez's whereabouts.

As to the first two points, to the extent appellants contend that guilty pleas or Stoller's being "mentioned" in an indictment somehow compelled the trial court to find respondents liable in the underlying case, there is no logical connection.  Guilt by association is not a facet of American law.  As to the accusation that Stoller "shield[ed" Velasquez

---

[21]     Appellants cite to a stipulation between the parties providing for the admission of certain exhibits that also included the language that "the parties are aware that during the course of the trial . . . the integrity of the Exhibits may have been breached and to such an extent, . . . the Courtroom Clerk shall not be held responsible for any such breach or related consequences.  To the extent that any exhibit is missing, the parties will jointly provide a replacement copy of that exhibit." This is not evidence that Stoller tampered with evidence at all, much less in a way that prejudiced appellants either at trial or on appeal.

by lying about his physical whereabouts, appellants point to nothing in the record to support this allegation. They additionally fail to articulate how Velasquez's absence at trial prejudiced them. Velasquez was accused only of being the trustee of trusts that claimed an interest in the real properties in question. As discussed above, the confirmed arbitration award foreclosed appellants from challenging the title to those properties.

### F. *We Deny the Motions Made During the Appeal*

#### 1. Judicial Notice

We deny appellants' request for judicial notice as the documents they request we notice -- a sentencing order for non-party Henschel, and plea agreements and indictments for Henschel and defendant Velasquez -- are irrelevant to this appeal. The SAC contains no allegation that Henschel or Velasquez committed any wrongdoing and regardless, proof that people potentially associated with Don have been indicted or sentenced for stealing real property has no tendency in reason to prove or disprove any disputed fact of consequence to the determination of this action, and is thus irrelevant. We also deny respondents' request for judicial notice as the documents they request we notice are unnecessary to decide this appeal.

## 2. Sanctions

We deny respondents' motion for sanctions.  While we have concluded substantial evidence supports the trial court's confirmation of the arbitration award, the amount of evidence is not staggering.  Given that the judgment relied heavily on the res judicata and collateral estoppel effects of the confirmed award, we do not find appellants' appeal frivolous.  Nor is there anything in the record to suggest the appeal was taken solely for the purpose of delay.

## 3. Additional Briefs

We deny both applications to file amicus briefs.  First, the applications are untimely.  California Rules of Court, rule 8.200(c)(1) provides that "Within 14 days after the last appellant's reply brief is filed or could have been filed under rule 8.212, whichever is earlier, any person or entity may serve and file an application for permission of the presiding justice to file an amicus curiae brief.  For good cause, the presiding justice may allow later filing."  Appellants' reply brief was filed on October 1, 2020, and "could have been filed under rule 8.212" on February 5, 2020.[22]  Therefore, the potential amici had until February 19, 2020, to request to

_____

[22]   California Rules of Court, rule 8.212(a)(3) provides: "An appellant must serve and file its reply brief, if any, within 20 days after the respondent files its brief."  Here, respondents filed their brief on January 16, 2020.  Twenty days thereafter is February 5, 2020.

file an amicus brief. They were eight months late.[23] No good cause has been shown to permit these late filings, and we discern none.

Second, California Rules of Court, rule 8.200(c)(2) provides: "The application must state the applicant's interest and explain how the proposed amicus curiae brief will assist the court in deciding the matter." Neither brief explains how the proposed amicus brief will assist us in deciding the matter. Both applications also lack the contact information required by rule 8.40(b).[24]

---

[23] Even were we to calculate the date from when appellants actually filed the reply brief, amici would be late.

[24] We note also that rule 8.200(c)(3) of the California Rules of Court requires that the application identify: "(A) Any party or any counsel for a party in the pending appeal who: [¶] (i) Authored the proposed amicus brief in whole or in part; or [¶] (ii) Made a monetary contribution intended to fund the preparation or submission of the brief; and [¶] (B) Every person or entity who made a monetary contribution intended to fund the preparation or submission of the brief, other than the amicus curiae, its members, or its counsel in the pending appeal." Though there is no evidence that Guy authored the amicus brief or paid for its drafting, Guy was the agent for service of process for "Protecting Our Elders," and in fact sent a letter on their behalf to the Appellate Division of the Superior Court. Yet that applicant made no disclosure under rule 8.200 regarding its relationship with Guy. We note additionally the similarities between the applications from "Protecting Our Elders" and "Mediation Center of Los Angeles" suggest a potential common (and undisclosed) author of both applications.

Respondents' motion to file a supplemental brief addressing appellants' reply brief, filed more than six months after appellants filed their reply brief, is denied.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

COLLINS, J.